**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

————————————————————

LENNY ABREU, )
                              **Plaintiff,** )
)
v. )
)
THE CITY OF NEW YORK, )
DET. DANIEL TORO, Shield No. 3664, )
    **Individually and in his Official Capacity,** )
P.O.s "JOHN DOE" #1-10 Individually )
    **and in their Official Capacities (the** )
    **name John Doe being fictitious as the** )
    **true names are presently unknown),** )
                         **Defendants.** )
————————————————————)

No. 04-CV-1721 (JBW)

MEMORANDUM, ORDER
AND JUDGMENT

Appearances:

For Plaintiff:
        Jon L. Norinsberg
        New York, New York

For Defendants:
        Corporation Counsel for the City of New York
        Law Department
        New York, New York
        By:    Hillary A. Frommer

1



## Table of Contents

I.  Facts..................................................................................................................................3

    A.    Robbery and Police Investigation............................................................3

    B.    Written Statement...................................................................................5

    C.    Oral Statement........................................................................................6

    D.    District Attorney Investigation and Prosecution.....................................7

II.  Law and Application of Facts to Law.................................................................7

    A.    Summary Judgment................................................................................7

    B.    Section 1983 Generally..........................................................................8

    C.    Municipal Liability................................................................................9

    D.    Individual Liability and Qualified Immunity........................................10

        1.    Law............................................................................................10

        2.    Application of Law to Facts......................................................11

    E.    Malicious Abuse of Process..................................................................12

    F.    Violation of Right to Fair Trial.............................................................13

        1.    Plaintiff's Evidence..................................................................13

            i.    Grand Jury Testimony...................................................14

            ii.    Statement Notice...........................................................17

            iii.    District Attorney's File.................................................18

        2.    Sufficiency of the Evidence......................................................20

III.  Conclusion........................................................................................................21

JACK B. WEINSTEIN, Senior District Judge:

While Section 1983 of Title 42 of the United States Code provides an important protection against police abuse, sometimes the statute itself is abused. This is such a case.

Plaintiff sued defendants Detective Daniel Toro, ten unnamed New York City police officers, and the City of New York ("the City") for false arrest and imprisonment; malicious prosecution; malicious abuse of process; and denial of his constitutional right to a fair trial. The City and Toro moved for summary judgment on all claims. The case is dismissed upon withdrawal of claims against the City, granting of the motion for summary judgment by Toro and failure to proceed against any unnamed police officers.

## I.    Facts

Based on the evidence viewed most favorably to plaintiff, the following are the facts:

### A.    Robbery and Police Investigation

On November 16, 2001 at 11:30 p.m., two men broke into and robbed the Snitser family home in Woodside, Queens. Rimma Snister and her fourteen year-old son Steven were the only family members present.

Mrs. Snitser filed a complaint the following day. She stated that the men came into her bedroom, tied her up, demanded to know the location of "the money, the gold, and the safe," and searched the second floor of the house. Steven related that the two men came into his room while he was asleep, threw a blanket over his head, tied him up and hit him with an unidentified object. The men stole money, jewelry and electronic equipment.

3

Steven suffered no visible injuries. There was no sign of a forced entry.

Though not the initial investigator, Toro became the case detective sometime in late November. He had had no prior contact with plaintiff or the victims of the robbery.

On November 29 Toro interviewed Steven at the 108th Precinct. Steven's father Simon—who did not want the family involved in the investigation—and Steven's sister Dina were both present. Steven claimed that he was unable to identify either of the robbers because they were wearing ski masks.

Toro believed that Dina was discouraging Steven from speaking. She did give Toro the names of three of her friends—Oscar Ramirez, Freddy Ceron, and plaintiff—as men who had previously been in the Snitsers' home. One, Oscar, had stayed in the house for a week without the parents' knowledge.

The night of the robbery, Oscar picked Dina up from her home sometime before midnight, dropped her off at a club in the Bronx, and returned to pick her up. She arrived home around 3:30 a.m. Though Oscar had called Dina frequently before the robbery, he rarely did so afterwards. When he did call, he asked about the investigation. About two weeks after the robbery, he called Dina to tell her that he was leaving New York for Pennsylvania, and wanted to retrieve some shoes he had left at the Snitser home during a previous visit. He was thereafter neither interviewed nor found.

In January 2002, Toro interviewed Steven again, this time without any other member of his family present. Steven then asserted that during the robbery he had seen and recognized plaintiff, who was wearing a red bandana and hood. He indicated that he knew plaintiff as "Lenny." Steven said he recognized the voice of the second robber as that of Oscar, Dina's

4

boyfriend. When Toro showed him a photo array, within seconds Steven identified plaintiff as one of his assailants.

Toro attributed Steven's delay in coming forward to pressure from his family. According to Neil Gitin, the Queens County Assistant District Attorney assigned to the case, Steven's father explicitly discouraged both Steven and his mother from assisting in the prosecution. By the time of the second interview, Steven had admitted to Toro that he had previously stolen jewelry from his parents' home and had sold it to satisfy a debt he owed for marijuana. Steven had been arrested for the previous crime.

After Steven had identified plaintiff as his assailant, Toro learned that plaintiff had been incarcerated in December 2001 at Willard Drug Treatment Facility for a parole violation. Toro contacted the facility in April 2002 to determine when plaintiff would be released.

Plaintiff was arrested by Toro on June 25, 2002, taken to the 108th Precinct station house and placed in an interview room. It is not clear whether an Assistant District Attorney—a "riding A.D.A." responsible for accompanying police officers on arrests and interviews—was present.

### B.    Written Statement

Upon being read *Miranda* warnings, plaintiff waived his rights. He wrote and executed a five-page statement. The conditions of the interrogation and statement were not coercive.

Plaintiff denied any knowledge of, or involvement in, the robbery. He admitted knowing Oscar and Fred, the other two men mentioned by Dina, but claimed ignorance of whether Oscar and Fred had committed the robbery. He admitted that Dina had accused him over the phone of committing the robbery, but insisted that he was innocent.

5

After plaintiff completed his written statement, a lineup was conducted. Steven positively identified plaintiff as his assailant on the night of the robbery. Charged with burglary and robbery, plaintiff was then incarcerated. He remained in jail to the end of his trial.

## C.    Oral Statement

A record of an oral statement attributed to plaintiff appears in the District Attorney's file. It indicates that, at 6:30 p.m. in the 108th Precinct—one hour and fifteen minutes before he signed his handwritten statement—plaintiff said: "Oscar did the robbery. Fred did the robbery. Oscar was the driver." The intake sheet on which this statement appears indicates that the statement was made "to" Toro. Toro did not draft or sign the intake sheet. He does not remember plaintiff making the statement and denies ever having claimed that plaintiff made it. No witness, including plaintiff, claims to have heard Toro state that plaintiff had made an oral statement.

Gitin, the prosecuting Assistant District Attorney, has no personal knowledge of the source of the oral statement. He testified at a deposition that the oral statement may have been a compilation of three or four different statements which he had gathered together from elsewhere in the prosecution's files or police reports. He was not the initial prosecutor on the case, and has no memory of who was. Gitin stated that the riding Assistant District Attorney may also have heard the statement being made in Toro's presence and so may have written that it was made "to" Detective Toro. No other independent record of the oral statement has been found.

### D.  District Attorney Investigation and Prosecution

Before trying the case Gitin conducted his own investigation.  He interviewed all four members of the Snitser family.  Consistent with his second statement to Toro, Steven maintained that he had seen plaintiff the night of the robbery.  The others gave substantially the same reports as they had given to Toro.  Gitin has no specific memory of meeting with Toro during the investigation.  He testified that Toro never encouraged him to prosecute plaintiff.

At the indicting grand jury hearing, plaintiff testified and was confronted with his supposed oral statement.  He denied any knowledge of the robberies.  He denied making the oral statement.  A true bill was returned on nine counts.

At the trial, Gitin did not offer evidence of an oral statement.  On cross-examination, Steven testified that he "assumed [the perpetrator] was [plaintiff]."  It was Gitin's view that this lack of certainty on Steven's part caused the case to "implode."  Plaintiff was acquitted by the jury of all charges.

## II.  Law and Application of Facts to Law

### A.  Summary Judgment

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).

All facts and inferences are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348 (1986). Facts and inferences must be drawn from admissible evidence. "Supporting and opposing affidavits . . . shall set forth such facts *as would be admissible in evidence*." Fed. R. Civ. P. 56(e) (emphasis supplied). Evidence that would not be admissible at trial cannot provide a basis for a denial of a motion for summary judgment. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. *See also Matsushita*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"); *Trebor Sportswear Co., Inc. v. Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) (party opposing summary judgment must "identify sufficient *admissible* evidence . . . to demonstrate that there existed a genuine issue of material fact" (emphasis supplied)).

### B.    Section 1983 Generally

Plaintiff brings this suit under Section 1983 of Title 42 of the United States Code, which provides a cause of action for the deprivation of civil rights. The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

42 U.S.C. § 1983.

Section 1983 is an important curb on police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S. Ct. 1827, 1830 (1992). Penalized are law enforcement officers who abuse their positions of power by substituting enmity for investigation—e.g., arresting and charging an individual without cause, *see Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994), or fabricating evidence against him. *See Taylor v. Sullivan*, 980 F. Supp. 697 (S.D.N.Y. 1997), *aff'd* 166 F.3d 1201. It does not provide redress to an accused simply because he has been acquitted of criminal charges. *See, e.g., Martinez v. Simonetti*, 202 F.3d 625, 630 (2d Cir. 2000) (summary judgment granted against plaintiff claiming false arrest after he was acquitted on all charges).

## C.     Municipal Liability

A municipality will not be held liable under Section 1983 unless the plaintiff can demonstrate that the allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom "officially adopted and promulgated by that [municipality's] officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036 (1978). To prove that non-supervisory personnel's conduct constitutes a "custom or usage," a plaintiff can demonstrate that their practices are so well known that policymaking officials constructively acquiesced in their continuation. *City of St. Louis v. Praprotnik*, 485 U.S. 112,

127, 108 S. Ct. 915, 926 (1988). Absent specific allegations that he acted pursuant to an official policy, a single individual's misconduct will not result in respondeat superior liability for his supervisors. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

No facts demonstrate that the City's leaders promulgated an official policy or custom of false arrest, malicious prosecution, malicious abuse of process, or violation of the right to a fair trial. There is no evidence suggesting that Toro's alleged actions were so well known that policymaking officials had constructively acquiesced in their continuation. Appropriately, at oral argument plaintiff withdrew his municipal claims, mooting the City's motion for summary judgment.

### D.    Individual Liability and Qualified Immunity

#### *1.    Law*

Individual liability under Section 1983 arises when, acting under color of law, one individual violates another's constitutional rights. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) (defining when a defendant acts under color of law). A police officer acting in his official capacity acts under the color of law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).

Qualified immunity protects an officer's discretionary activity in the scope of his employment. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Probable cause provides qualified immunity against claims of: false arrest, *Jocks*, 316 F.3d at 134 (plaintiff must establish "lack of probable cause"); false imprisonment, *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995) (same); and malicious prosecution. *Jocks*, 316 F.3d at 136

10

(same). It does not provide a defense to a claim for violation of a right to a fair trial, Jocks at 138, or malicious abuse of process. *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003).

### 2. *Application of Law to Facts*

Toro had probable cause to arrest plaintiff. Shortly after he became case detective, he investigated the crime and interviewed the entire victim-family. Dina Snitser provided Toro with the names of three men—all friendly with each other—who had been in her house previously, including one, Oscar, who had stayed in the house for a week without her parents' knowledge. At first both Rimma Snitser and her son Steven indicated that they could not identify the perpetrators. Toro, however, had sufficient reason to suspect that Dina's presence and Steven's father's disinclination to pursue the case prevented Steven from speaking truthfully.

Just over a month later, Steven visited the precinct alone and indicated to Toro that he had, in fact, recognized one of his assailants by sight and another by sound. He identified plaintiff as his assailant in a constitutionally fair photo array.

Toro was aware of Steven's previous crime. Nevertheless, he could reasonably have decided that Steven's identification was credible. "A crime victim's unequivocal identification of a suspect . . . provides probable cause for an arrest, so long as the officer's belief in the [victim's] allegations was reasonable." *Breitbard v. Mitchell*, 390 F. Supp. 2d 237, 245 (E.D.N.Y. 2005). Where there is no dispute with regard to the pertinent events and knowledge of the officer, the existence of probable cause may be determined as a matter of law on a motion for summary judgment in a Section 1983 case. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

11

His investigation provided Toro with probable cause to arrest and charge plaintiff. At a fair lineup the night of plaintiff's arrest, Steven again positively identified plaintiff—who he had known before the crime—as his assailant. The claims of false arrest, false imprisonment and malicious prosecution cannot stand.

It may appear curious that Toro chose not to arrest Oscar, despite Steven's aural identification and Dina's testimony that he had been in the Snitser home previously. Sufficient reasonable basis for this exercise of discretion existed in the more reliable eyewitness identification. In addition, Oscar appears to have left the state, while the plaintiff was at hand. An officer is not required to chase down every lead. He may use his best judgment based on all of the facts as they then appear to him. *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) ("[I]n qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene.").

### E.     Malicious Abuse of Process

To sustain a claim for malicious abuse of process, plaintiff must demonstrate that Toro: 1) employed regularly issued legal process to compel his appearance in court, 2) with the intent to do harm without excuse or justification, 3) in order to obtain an illegitimate collateral objective. *Savino*, 331 F.3d at 76. Absence of probable cause would permit a fact-finder to infer the intent to do harm. *Id.* at 77.

As already noted, *see supra* II.D.2, Toro had probable cause to arrest plaintiff. There is no evidence suggestive of ill-will towards him by Toro. Malice cannot be established. *See id.*

12

(where defendant had probable cause to arrest, plaintiff is not entitled to inference of malice based on absence of probable cause).

Toro's motion for summary judgment on the claim of malicious abuse of process is granted.

### F.     Violation of Right to a Fair Trial

When an officer supplies false information to a prosecutor about a suspect, the officer has violated that suspect's right to a fair trial. *Ricciuti*, 124 F.3d at 130. Such unlawful conduct gives rise to an action under Section 1983. *Id.* ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C § 1983."). This is true even if the officer had probable cause to arrest the accused in the first place. *Jocks*, 316 F.3d at 138.

Plaintiff denies making the oral statement that appears in the District Attorney's file. Toro denies ever hearing or recounting it. Since plaintiff is entitled to all favorable inferences, the court assumes for the purpose of this decision that plaintiff did not make the oral statement attributed to him. Nevertheless, it cannot find that Toro invented and forwarded the statement since there is no credible evidence to support this inference.

#### 1.     *Plaintiff's Evidence*

Plaintiff has adduced three documents that potentially tie Toro to the oral statement: a transcript of plaintiff's grand jury testimony; a statement notice submitted by the State in

13

preparation for plaintiff's criminal trial; and an entry in the Queens County District Attorney's file. Only admissible evidence is to be considered on the motion for summary judgment. *See supra* II.A.

### i. Grand Jury Testimony

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid 801(c). Subject to some exceptions, hearsay evidence is inadmissible. Fed. R. Evid. 802.

A transcript of plaintiff's grand jury testimony reveals that, on cross examination, Gitin asked him, "Sir, isn't it a fact that you told Detective Torro [sic] of the [New York Police Department] on June 25, 2002 that Oscar did the robbery, Fred did the robbery, Oscar drives and Oscar has a light-colored Windstar?" Plaintiff denied making the statement and denied any knowledge of the robbery. The grand jury returned an indictment against plaintiff on nine counts, including robbery and assault.

Plaintiff seeks to use Gitin's suggestion—that plaintiff told Toro details about the robbery—against Toro. He offers Gitin's question to prove that Toro told someone in the prosecutor's office that plaintiff admitted knowledge of the robbery.

Only relevant evidence is admissible. Fed. R. Evid. 402. Gitin's statement is relevant only if plaintiff can provide evidence sufficient to show that it came from Toro.

Federal Rule of Evidence 104(b) provides:

> When the relevancy of evidence depends upon the fulfillment of a
> condition of fact, the court shall admit it upon, or subject to, the
> introduction of evidence sufficient to support a finding of the

14

fulfillment of the condition.

Fed. R. Evid. 104(b). The condition of fact to be fulfilled is that Toro made the statement.

Gitin was cross-examining plaintiff before the grand jury in an effort to secure an indictment. He questioned plaintiff sharply, attempting to cause him to inculpate himself. For example:

> Q.   Isn't it a fact that on November 16 when [Steven] was tied up and a sheet was put over his head you pistol-whipped him?
> A.   I wasn't there.
> Q.   What was it that you hit him with?
> A.   I wasn't there.
> Q.   What was that that Oscar hit him with?
> A.   I don't know if he was there.

T. of Grand Jury Proceedings 100:20-101:2. This line is not atypical of a prosecutor's examination of a suspect before a grand jury. Most prospective defendants choose not to testify before grand juries in order to avoid the dangers attendant on such unrestrained questioning.

Any statement plaintiff made during these proceedings could have been introduced at his criminal trial as substantive evidence—i.e., to prove the truth of the matter asserted—if he chose to testify at trial and made a statement inconsistent with his grand jury testimony. *See* Fed. R. Evid. 801(d)(a)(A); *id.* advisory committee's note ("Prior inconsistent statements traditionally have been admissible to impeach but not as substantive evidence. Under the rule they are substantive evidence.").

Gitin's innuendos before the grand jury could not be offered as substantive evidence at the criminal trial. They were made in a highly adversarial context, lacking probative value of their

15

truth. While at a trial the court will insist that there be a reasonable basis for the implied charge thrown against a witness being cross-examined, even this minimal protection is lacking in a grand jury proceeding where there is no judge present.

Before the grand jury, Gitin made numerous assertions that he may not have been able to prove at trial. This, unfortunately, is not unusual. The Federal Rules of Evidence do not apply in grand jury proceedings. *See* Fed. R. Evid. 1101(d)(2); *United States v. Calandra*, 414 U.S. 338, 343, 94 S. Ct. 613, 617 (1974) ("The grand jury['s] . . . operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials."). The grand jury's duty is to determine only "whether there is probable cause to believe a crime has been committed . . . ." *Id.* It need not satisfy itself beyond a reasonable doubt that the accused has committed the crime or that particular evidence before it is probative. There is nothing remarkable—or suggestive of law enforcement malfeasance—about a verdict of innocence after an indictment.

There is insufficient basis for concluding from the adversarial questioning of plaintiff during his grand jury testimony that defendant Toro made the statement plaintiff seeks to attribute to him. *See* Fed. R. Evid. 104(b). Gitin's question lacks probative force, and would be inadmissible at trial. *See* Fed. R. Evid. 402. It cannot serve as a basis for denying the summary judgment motion.

16

ii.  Statement Notice

Before trial, pursuant to section 710.30(1)(a) of the New York Criminal Procedure Law,

Gitin served notice of his intent to introduce plaintiff's written and oral statements.  The notice

reads as follows:

> PLEASE TAKE NOTICE, that the People intend to offer at
> trial an oral statement made by the defendant to DET DANIEL
> TORO on JUNE 25, 2002, at approximately 6 :30 PM, at 108 PCT.
>> The substance of the defendant's statement(s) is
>> "Oscar did the robbery.  Fred did the robbery.  Oscar was the
> driver.  Oscar's car is a light-colored Windstar" or words to that
> effect.
> PLEASE TAKE NOTICE, that the People intend to offer at
> trial a written statement made by the defendant to DET DANIEL
> TORO on JUNE 25, 2002, at approximately 7 :45 PM, at 108 PCT.
>> The substance of the defendant's statement(s) is
>> "SEE ATTACHED."

The attached written statement did not include the remarks about "Oscar" and "Fred."

Plaintiff seeks to introduce this notice as proof that Toro provided the prosecution with the

oral statement.  The admissibility of the notice depends, as with the grand jury questioning, on its

relevancy.  Its relevancy depends upon "the introduction of evidence sufficient to support a

finding" that Toro did, in fact, attribute to plaintiff the inculpatory remarks.  *See supra* II.E.1.i.

Gitin had not yet spoken to Toro as of August 12, 2002, when the notice was created.  The

prosecutor created this notice in preparation for litigation, not as a result of a factual investigation

of its truth.  It was based solely on the District Attorney's file.

The notice itself would not have been admissible at plaintiff's criminal prosecution as

evidence that he made the statement credited to him.  Toro would have had to testify that plaintiff

17

made the statement. Had he testified at the criminal trial, as he did at deposition in this case, that he did not recall hearing the statement, it would not have been admitted. Toro did not testify about the statement at the criminal trial. It was not introduced against plaintiff.

There is no basis for tying this document to Toro. Just as, absent adequate foundation, the statement could not be introduced against plaintiff in the criminal trial, it could not be admitted against Toro in this civil action.

### iii. District Attorney's File

The third document plaintiff relies upon in his opposition to the motion for summary judgment is an intake sheet from the Queens County District Attorney's file on the Snitser robbery. The file reads:

> STATEMENTS OF DEFENDANT #1
> [Box checked indicating statement was made after *Miranda* warnings.]
>
> To Whom:_Det. Daniel Toro_ Where & When:_108 Pct. 6/25/02_
> [Boxes checked indicating both oral and written statements made.]
> [Box left unchecked indicating no videotape was made of the statements.]
>
> Substance of Statement: Oral— Oscar did the robbery. Fred [word scratched out] did the robbery. Oscar Was the driver. Oscar's car is a light-colored windstar. (6/25/02 - 6:30p.m./108 Pct.)
> See written statement.

Plaintiff relies upon this page as proof that Toro fabricated the oral statement and relayed it to the prosecution.

18

Under the "public records" exception, notwithstanding the declarant's availability as a witness, the following is exempt from the ban on hearsay evidence:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, *unless the sources of information or other circumstances indicate lack of trustworthiness.*

Fed. R. Evid. 803(8) (emphasis supplied). "Rule 803(8)(C) is to be applied in a commonsense manner, subject to the district court's sound exercise of discretion in determining whether the . . . document offered . . . has sufficient independent indicia of reliability to justify its admission." *City of New York v. Pullman, Inc.*, 662 F.2d 910, 914 (2d Cir. 1981). The record of defendant's alleged statement is a "factual finding resulting from an investigation." It may be assumed for the purpose of the present discussion that it is admissible as a public record if it "*has sufficient independent indicia of reliability.*" *Id.* (emphasis supplied). It lacks those indicia.

The intake sheet itself contains no evidence directly tying Toro to the statement. Toro did not sign the sheet and denies ever having claimed that plaintiff made the statement. Gitin has no personal knowledge of who made the entry. It may have been drafted by another Assistant District Attorney who was present in the precinct when plaintiff was arrested who thought he heard it being made "to" Toro by plaintiff. Under these circumstances this entry would be excluded were it offered against Toro in this civil suit.

2. *Sufficiency of the Evidence*

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Plaintiff's evidence is null. It is insufficient as a matter of law.

Plaintiff concedes that he never heard Toro claim that plaintiff made the oral statement. Plaintiff has presented no deposition testimony of any person who claims to have personal knowledge that Toro attributed the remarks to plaintiff.

Plaintiff has offered one potentially admissible document supporting his allegation that Toro manufactured evidence against him. Assuming it were admitted, the jury would not have to credit it. *See* Fed. R. Evid. 104(e) (though the court determines admissibility, "a party [may] introduce before the jury evidence relevant to weight or credibility."). It has almost no inferential probative force. No rational jury could return a verdict in plaintiff's favor based on the evidence plaintiff proffers.

Section 1983 provides important protections against police misconduct in appropriate cases. *See, e.g., Jocks* (off-duty police officer argued with truck driver plaintiff, ordered him to the ground and pressed a gun to the back of plaintiff's head); *Ricciuti* (off-duty officer brawled with fan outside New York Yankees game; fellow officer fabricated detailed confession that was inconsistent with verifiable details of other police reports).

This is not such a case. Both the detective and the prosecutor in this instance—strangers to plaintiff and without apparent animus towards him—conducted thorough, independent

20

investigations of a robbery. There is no allegation of physical abuse. Plaintiff can produce no motive for the alleged fabrication. The victim identified plaintiff by name as his assailant and later identified him in both a photo array and a lineup. The grand jury properly returned an indictment. After a full and fair trial, plaintiff was acquitted on all charges. On the record before the court, the motion must be granted.

The allegation that an officer has fabricated evidence is serious. That plaintiff spent an extended period in jail for a crime of which he has been acquitted is troubling; it is not unusual. *See* Bureau of Justice Statistics, Compendium of Federal Justice Statistics 54 (2003) (average period of pretrial detention for robbery suspects who could not afford to make bond was 165.5 days). Bail is sometimes properly set high, or denied, for those who pose a serious risk of flight or threat to the community. Even modest bail may prevent many defendants from securing their release pending trial. *See* Vera Institute of Justice, Foreword, Bail Bond Supervision in Three Counties (1995) ("[P]ersonal wealth determined whether someone detained on a relatively low bail amount would be held in jail until their case ended or would be able to post bail and remain free."). Absent proof of official misconduct, lengthy pre-trial detention not deliberately caused by acts of a police officer does not provide a basis for relief under Section 1983.

## III.    Conclusion

The motion for summary judgment by Detective Daniel Toro is granted. Claims against the City are withdrawn. Plaintiff has not pressed his claims against the unnamed officers; the

21

motion for summary judgment on all claims against them is granted.

The case is dismissed. Costs and fees are granted to Daniel Toro.

SO ORDERED.

Jack B. Weinstein

Dated: February 22, 2006
Brooklyn, New York